IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANGELA McKAY, *on behalf of Anisha Ituah*, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:18-CV-11-RP |
| AUSTIN STATE HOSPITAL, *et al.*, | § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is the report and recommendation of United States Magistrate Judge Mark Lane concerning Defendant Alan R. Isaacson's ("Isaacson") partial motion to dismiss, (Dkt. 60), and Defendant Catherine Nottebart's ("Nottebart") (collectively, "Defendants") motion to dismiss, (Dkt. 68). (R. & R., Dkt. 93). In his report and recommendation, Judge Lane recommends that the Court grant the motions with respect to Plaintiff Anisha Ituah's ("Ituah") state law claims and § 1985(3) claims but deny the motions with respect to her § 1983 claims. (*Id.* at 16). Defendants have timely objected to the report and recommendation with respect to Ituah's § 1983 claims and with respect to standing. (Objs., Dkt. 96).

A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). Because Defendants timely objected to the report and recommendation with respect to Judge Lane's § 1983 and standing recommendations, the Court reviews those portions of the report and recommendation *de novo*. The Court reviews the remainder of the report and recommendation for clear error.

1

Having done so, the Court finds no clear error in Judge Lane's recommendation that the Court dismiss Ituah's state law claims and § 1985(3) claims. The Court therefore accepts and adopts the report and recommendation as its own order with respect to those claims. The Court now turns to the portions of the report and recommendation to which Defendants objected.

## I. Personal Involvement Requirement

Defendants do not challenge that Ituah has sufficiently alleged a violation of her constitutional rights. Rather, they allege that they were not personally involved in the violation of her rights. (Objs., Dkt. 96, at 6–7).[1]

It is true that suits under § 1983 can only be brought against government officials for their own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "Personal involvement is an essential element of a civil rights action." *Thompson v. Steele*, 709 F.2d 381, 381 (5th Cir. 1083) (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976)). Defendants, however, conflate "personal involvement" with "supervisory liability" and incorrectly assume that "supervisory" conduct is not actionable under § 1983. They argue that Ituah has "failed to allege any facts that point to Isaacson's personal involvement in an incident that the magistrate recognized occurred before Isaacson assumed the superintendent position with ASH." (Objs., Dkt. 96, at 7). Similarly, they argue that "[t]he same problem exists as to Nottebart," and "Section 1983 claims against supervisory officials cannot be premised merely upon their knowledge of subordinates' actions." (*Id.* (citing *Iqbal*, 556 U.S. at 677)).

Defendants mischaracterize Ituah's complaint. She alleges that the "Individual Defendants"—including Isaacson and Nottebart—"have policies, practices, and/or customs that:

---

[1] As explained in this section, Ituah has sufficiently pleaded that Defendants are liable for the violation of her constitutional rights. Alternatively, the Court finds that Defendants have waived their argument that they were not personally involved in the violation of Ituah's constitutional rights. Defendants did not raise this argument before the magistrate judge. (*See* Isaacson Mot. Dismiss, Dkt. 60; Isaacson Reply, Dkt. 66; Nottebart Mot. Dismiss, Dkt. 68; Nottebart Reply, Dkt. 72). "[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. Cty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994)). Accordingly, Defendants waived their personal-involvement argument.

a. Fail to protect the Constitutional rights of female patients;
b. Fail to prevent and/or minimize the risk of sexual assault by fellow patients against female patients;
c. Fail to conduct and/or submit sexual assault kits to law enforcement;
d. Fail to report to police, restrict, constrain, reassign, or otherwise prevent sexual assault by known perpetrators of sexual assault against female victims;
e. Fail to conduct reasonable investigations into allegations of sexual assault against female victims; and
f. Fail to adequately and appropriately train ASH personnel regarding sexual assault against female victims; and
g. Fail to institute reasonable safety measures to decrease the risk of sexual assault against female patients."

(Second Am. Compl., Dkt. 57, ¶ 103). These policies, practices, and customs, Ituah alleges, "created a danger of an increased risk of harm of sexual abuse of females, and/or fostered an environment in which female victims are sexually abused and/or in fear of sexual assault" in violation of her right to equal protection. (*Id.* ¶ 110). The "incident" to which Defendants attempt to limit the Court's view—Ituah's alleged rape by a male patient at ASH—is an "injur[y] . . . result[ing] from these unconstitutional practices." (*Id.* ¶ 104). Defendants' argument that Isaacson is not liable for the misconduct alleged because he was not "personally involved" in Ituah's rape is beside the point.

As for Nottebart, Defendants' objections fare no better. Ituah alleges that Defendants were personally involved in the violation of her constitutional rights because they "knew about the described conduct and policies and facilitated them, condoned them and/or turned a blind eye to them." (*Id.* ¶ 117). Defendants argue that Nottebart is not liable for the misconduct alleged because "[t]he Supreme Court held in *Ashcroft v. Iqbal* that Section 1983 claims against supervisory officials cannot be premised merely upon their knowledge of subordinates' actions." (Objs., Dkt. 96, at 7 (citing *Iqbal*, 556 U.S. at 677)). But *Iqbal* does not help Defendants. In that case, the Supreme Court explained that "the term 'supervisory liability' is a misnomer" in a § 1983 suit and that qualified immunity may be overcome for "an official charged with [constitutional] violations arising from his or her superintendent responsibilities." 556 U.S. at 677. It is thus immaterial that Defendants supervise other individuals who may also have violated Ituah's constitutional rights; what matters is

3

whether Defendants themselves committed constitutional violations in executing their superintendent responsibilities.

Ituah has sufficiently alleged that they have. She alleges that Defendants were personally involved in the violation of her constitutional rights because they "knew about the described conduct and policies and facilitated them, condoned them and/or turned a blind eye to them." (*Id.* ¶ 117). These actions are enough to state a claim for supervisory liability under § 1983 if the policies or conduct themselves are "a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted). Viewed in the light most favorable to Ituah, the Court finds that she has alleged that Defendants' "policies, practices, and/or customs," (Second Am. Compl., Dkt. 57, ¶ 103), have violated her constitutional rights.[2]

## II. Clearly Established Law

Next, Defendants challenge that the magistrate judge erred in "avoid[ing] the clearly-established law" prong of a qualified immunity analysis "by declaring this an 'obvious case'" and "cit[ing] *Youngberg v. Romeo*, 457 U.S. 307 (1982) in support of that proposition." (Objs., Dkt. 96, at 8). Specifically, Defendants argue that the magistrate judge did not address whether they had "fair notice" that their actions were unconstitutional because in "obvious" cases, no prior precedent is needed to establish that a challenged practice violates a plaintiff's constitutional rights. (*Id.* at 9 (citing *Hope v. Peltzer*, 536 U.S. 730, 739, 741 (2002))). The word "obvious," however, appears nowhere in the report and recommendation, and the magistrate judge cited *Youngberg* for the proposition that "when persons are involuntarily committed to a mental institution and thus

---

[2] Defendants also argue that the magistrate judge committed clear error because he did not "undertake an individualized assessment of both Isaacson's and Nottebart's knowledge and personal involvement with Ituah during her week-long stay at ASH." (Objs., Dkt. 96, at 7). The Court has assessed the actions of both Defendants in its *de novo* review of the magistrate judge's report and recommendation and has found that Ituah has sufficiently pleaded that each Defendant has committed constitutional violations in executing their superintendent responsibilities.

4

completely dependent on the state, the state has a duty to provide such patients with certain services and care as are necessary for their 'reasonable safety' from themselves and others." (R. & R., Dkt. 93, at 12 (citing *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995) (citing *Youngberg*, 457 U.S. at 351–16 (1982)))). Defendants' objection that "[b]ecause this is not an *obvious* case, the magistrate should have conducted a proper analysis of the clearly-established prong of qualified immunity," (Objs., Dkt. 96, at 9), is misconceived and therefore overruled.[3]

The Court further concludes that the magistrate judge analyzed the clearly-established-law prong appropriately and upon *de novo* review, the Court agrees with his recommendation. *Youngberg*'s recognition that institutionalized mental patients have a right to personal safety has been firmly established in the Fifth Circuit since at least 1980. *See Savidge v. Fincannon*, 836 F.2d 898, 908–09 (5th Cir. 1988). Because Ituah has sufficiently pleaded that (1) Defendants violated her constitutional rights and that (2) those rights were clearly established at the time they were allegedly violated, the Court finds that Ituah has sufficiently pleaded that Defendants do not have qualified immunity with respect to her § 1983 claims.[4]

### III. Standing

Finally, Defendants object that Ituah no longer has standing to bring her claims against them because Ituah no longer resides at Austin State Hospital ("ASH") and, they argue, it is speculative that she will return there. (*See* Isaacson Reply, Dkt. 66, at 1–2). In his report and recommendation, Judge Lane concluded that Ituah retains standing to bring her claims because this case falls "squarely within the special category of cases that are not moot because the underlying dispute is 'capable of

---

[3] Defendants also object that *Youngberg* is distinguishable because it involved a due process claim, not an equal protection claim. Defendants waived this argument because they failed to raise it before the magistrate judge. *Cupit v. Whitley*, 28 F.3d at 535.

[4] The Court reaches this conclusion based on the pleadings and applicable law; no further facts are needed. To the extent Defendants continue to seek an order requiring Ituah to further brief the qualified immunity issue, (*see* Objs., Dkt. 96, at 9–10), that request is denied.

repetition, yet evading review.'" (R. & R., Dkt. 93, at 15–16 (quoting *Turner v. Rogers*, 564 U.S. 431, 440 (2011))). The Court agrees.

A case is capable of repetition yet evading review when (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (citing *Sosna v. Iowa*, 419 U.S. 393 (1975)). With respect to the first requirement, Judge Lane found, and Defendants do not dispute, that "Ituah's confinement to ASH was too short for her claims to be fully litigated while she was there," and because ASH provides services to patients typically for "several days to a few weeks," it is unlikely that any patient would be able to litigate her claims while at ASH. (R. & R., Dkt. 93, at 15 (citing Isaacson Mot. Dismiss, Dkt. 60, at 1 n.1)). The first requirement is therefore satisfied.

With respect to the second requirement—whether there is a reasonable expectation that the same complaining party will be subjected to the same action again—*Olmstead v. L.C.*, 527 U.S. 581 (1999), is instructive. In *Olmstead*, a case on all fours with this one, the Supreme Court found that a case brought by patients similarly situated to Ituah was not moot because it presented a controversy capable of repetition yet evading review. *Id.* at 594 n.6. (citing *Honig v. Doe*, 484 U.S. 305 318–323 (1980) (discussing whether a plaintiff has a reasonable expectation of being subjected to the allegedly unconstitutional conduct again)). *Olmstead* involved two "mentally retarded women" with "a history of treatment in institutional settings" who were voluntarily admitted to a state hospital in Georgia. *Id.* at 593. The two patients, L.C. and E.W., sued state health officials, including a superintendent of the Georgia hospital, for violations of their constitutional rights under § 1983. *Id.* at 593–94. Although L.C. and E.W. no longer resided at the Georgia hospital, the Supreme Court held that "the case [was] not moot" because, "[a]s the District Court and Court of Appeals explained, in view of

6

the multiple placements L.C. and E.W. have experienced, the controversy they brought to court is 'capable of repetition, yet evading review.'" *Id.* at 594 n.6 (citations omitted).

Like L.C. and E.W., Ituah is mentally disabled—she is "a 32-year-old woman with the approximate capacity of a 12-year-old girl"—and has "suffered from cognitive impairment throughout her life." (*See* Second Am. Compl., Dkt. 57, at 2–3; ¶ 44). Like them, Ituah has sued superintendents of the state hospital to which she was admitted, and where she no longer resides, for violation of her constitutional rights.[5] And like the two *Olmstead* patients, Ituah "has been admitted to various hospitals." (Objs., Dkt. 96, at 11). These facts were sufficient for the Court to conclude that L.C. and E.W.'s action was not moot because it presented a controversy capable of repetition yet evading review. *Olmstead*, 527 U.S. at 594 n.6. So too here.

Accordingly, the Court concludes that this case is not moot. This case presents a controversy capable of repetition yet evading review. Ituah has standing to bring her claims against Defendants.

### IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the report and recommendation of United States Magistrate Judge Mark Lane, (Dkt. 93), is **ADOPTED**. Defendants' motions to dismiss, (Dkts. 60, 68), are **GRANTED IN PART** and **DENIED IN PART**. Ituah's state law claims and § 1985(3) claims against Isaacson and Nottebart, whether alleged against their individual or official capacities, are **DISMISSED**. Ituah's § 1983 claims against Isaacson and Nottebart remain.

**SIGNED** on July 19, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[5] Unlike L.C. and E.W., Ituah was involuntarily admitted to ASH. (*See* Second Am. Compl., Dkt. 57, ¶ 64).